## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| v. | ) | No. 15-10070-01-EFM |
| | ) | |
| ASHELY MARIE KELLY, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Ashley Marie Kelly, by and through her counsel Erin Thompson, hereby submits this Sentencing Memorandum in aid of sentencing, currently scheduled for July 18, 2016.

### BACKGROUND

Ms. Kelly pleaded guilty to one count of Production of Child Pornography in violation of 18 U.S.C. § 2251(a). Defendant acknowledges that the Court has indicated it is categorically rejecting all plea agreements made pursuant to Rule 11(c)(1)(C). However, Defendant respectfully submits that the sentence proposed in the plea agreement is an appropriate resolution of this case and asks that the Court allow itself to be bound by the terms of the plea agreement. With knowledge of the Court's position on Rule 11(c)(1)(C) plea agreements, Defendant posits that even without the binding plea agreement, a sentence of 300 months is an appropriate sentence when the Court considers the factors of 18 U.S.C. § 3553.

1

This memorandum is being submitted to set forth Defendant's position on why the agreed terms in the plea agreement are an appropriate disposition of this matter.

### I.     The Nature and Circumstances of the Offense

Ms. Kelly was indicted on May 27, 2015; she was charged with three counts of production of child pornography in violation of 18 U.S.C. §2251(a) and one count of forfeiture.

Ms. Kelly's indictment was the result of an investigation that originated from a report made by Google to law enforcement in June of 2014. In July of 2014, the Ford County Sheriff's Department executed a search warrant on the email addresses associated with the reported activity and subsequently was determined to be linked to Ms. Kelly. On August 24, 2014, the Ford County Sheriff's Department executed a search warrant of Ms. Kelly's home. That day Ms. Kelly cooperated with law enforcement and admitted she had taken the images in question.

On March 14, 2016 Ms. Kelly entered a plea agreement pursuant to Fed.R.Crim.P. Rule 11(c)(1)(C). She agreed to plead guilty to Count 1 of the Indictment and the parties sought a sentence of 300 months.[1] In return for Defendant's plea of guilty, the Government agreed to dismiss the remaining counts in the Indictment.[2]

Sentencing was originally scheduled for June 1, 2016 and subsequently reset for May 31, 2016 by the Court.[3] Defendant then requested two continuances as detailed below.

### II.    Ms. Kelly's Background

Ms. Kelly was born in Albuquerque, New Mexico where she lived until she was about 7 years old. In Albuquerque Ms. Kelly was the victim of sexual molestation perpetrated against her by a grandfather figure. Ms. Kelly's step-grandfather would entice her to watch television with

---

[1] *See* Dkt. 43, p. 2.
[2] *Id.* at p. 3.
[3] *See* Dkt. 39, Dkt. 44.

him late at night when no one else was awake. He would then place her hands down his pants and have her manually stimulate him.

When Ms. Kelly was about 7 years old, her mother and her mother's partner decided to move the family to Dodge City, KS where her mother's partner had family. Although the move allowed her to escape from the abuse of her step-grandfather, it brought another abuser with them.

Ms. Kelly's stepbrother began to abuse her when the family moved to Dodge City. He would force her to perform oral sex on him while their parents were out. The abuse escalated until he unsuccessfully attempted to force her to have intercourse with him.

While this was ongoing, Ms. Kelly graduated from Dodge City High School in 2009 and continued her education at Dodge City Community College where she obtained her Certified Nursing Assistance certificate.

Ms. Kelly was the only child of her mother, who was disabled. The two had an extremely close relationship and relied heavily on each other. Ms. Kelly's mother had a history of clinical depression and abused alcohol seriously in the past.

Ms. Kelly was living with her boyfriend at the time she committed the underlying acts. She was in a town with minimal support and few friends when the relationship with her boyfriend began to deteriorate. She was isolated and suffering a severe depressive episode when this occurred.

As stated above, the sentencing was originally set for May 31, 2016.[4] Ms. Kelly's mother totaled her car and needed time to secure transportation so she could attend the sentencing hearing. In light of this, Defendant requested a continuance of 30 days, which the Court granted.[5]

---

[4] *See* Dkt. 44.
[5] *See* Dkt. 48.

Unfortunately in the time between the change of plea hearing and sentencing, Ms. Kelly's mother passed away. Ms. Kelly's family has not been able to secure family supervision and a reliable ride from Harvey County Adult Detention Center, where Ms. Kelly is incarcerated, to Dodge City so she could attend her mother's funeral.[6]

Defendant requested a second continuance following the Court's announcement that it was no longer accepting Rule 11(c)(1)(C) agreements, which the Court granted. *See* Dkt. 51, Dkt. 52.

### III. The Sentence Proposed in the Plea Agreement is Appropriate.

#### 1. Ms. Kelly asks that the Court consider her 11(c)(1)(C) plea agreement and make fact findings specific to her case as to whether it is an appropriate resolution.

Defendant was alerted on June 22, 2016 via email from the Court's chambers that the Court is no longer accepting Rule 11(c)(1)(C) plea agreements. The email said those "for which the plea hearing has already occurred and are awaiting sentencing you should expect Judge to categorically reject the plea and offer the defendant the right to be sentenced without the plea, or to withdraw [her] plea, at [her] choice." *See Exhibit A*.

Defendant acknowledges that the Court was never bound to follow the plea agreement and always had the discretion to reject the plea agreement. However, she respectfully requests that the Court consider her plea and make individualized reasons for accepting or rejecting the plea agreement based on the specific facts and circumstances of Ms. Kelly's case.

As part of the plea agreement, the government agreed to dismiss counts two and three. This charge bargaining is within the executive branch's powers and courts should be hesitant to

---

[6] Defendant withdraws her pending motion for release. *See* Dkt. 50.

4

interfere with these decisions.[7] Rule 11 clearly gives district courts the discretion to accept or reject plea agreements, including those that contain a stipulated sentence term.[8] Rule 11 also specifies procedures the court must follow when rejecting a plea agreement. The court must on the record and in open court inform the parties that the court rejects the plea, advise the defendant that the court is not bound by the plea and give the defendant the opportunity to withdraw the plea; and advise the defendant personally that if it is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.[9]

In *In re Morgan,* the Ninth Circuit has held that categorical rejection of sentence bargain plea agreements is error and courts should make individualized assessments of the propriety of a defendant's stipulated sentence in light of the factual circumstances specific to the case.[10] The Ninth Circuit reviewed its prior holding in *United States v. Miller* to deduce that because "Rule 11 allows district courts to assess the wisdom of plea bargains, this power must be exercised reasonably, and '[w]hen a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised.'"[11]

In *Morgan* even though the district court went so far as to consider the factors required by 18 U.S.C. § 3553, it committed error when it held that the sentence was "unreasonable as a matter of law, not necessarily unreasonable as a matter of fact."[12]

Admittedly, this is contrary to the Tenth Circuit's holding in *United States v. Robertson*:

> As such, [former] 11(e)(1)(C) pleas directly and unequivocally infringe on the sentencing discretion of district courts. In our judgment, the court's categorical

---

[7] *See United States v. Robertson*, 45 F.3d 1423, 1438 (10th Cir. 1995)(Thus, while district courts may reject charge bargains in the sound exercise of judicial discretion, concerns relating to the doctrine of separation of powers counsel hesitancy before second-guessing prosecutorial choices.)
[8] *See* FED.R.CRIM.P. 11(c)(3)(A).
[9] *See* FED.R.CRIM.P. 11(c)(5).
[10] *See In re Morgan,* 506 F.3d 705, 712 (9th Circuit 2007).
[11] *Id,* 506 F.3d at 710 citing *Miller*, 722 F.2d 562, 563 (9th Cir. 1983).
[12] *Id*, 506 F.3d at 708.

> refusal to accept pleas pursuant to subsection (C) can only be understood as its refusal to completely yield its discretion in sentencing. There can be little doubt that rejecting a plea agreement due to the court's refusal to permit the parties to bind its sentencing discretion constitutes the exercise of sound judicial discretion.[13]

Yet, in *Robertson* the Court was merely rejecting Rule 11(c)(1)(C) plea agreements categorically in a specific case, not uniformly across the board.

The plea agreement in *Robertson*, as it is here, was a mixture of charge bargaining and sentence bargaining, and, thus, it implicates both judicial and prosecutorial discretion.[14] Like the Ninth Circuit in *Morgan* the *Robertson* court also looked to *Miller* for guidance. The Tenth Circuit held that courts must set forth on the record the prosecution's reasons for framing the bargain and the court's justification for rejecting it.[15]

> Requiring district courts to articulate the reasons for rejecting a plea agreement not only helps insure the court is aware of and gives adequate deference to prosecutorial discretion, it is the surest, indeed the only way to facilitate appellate review of rejected plea bargains.[16]

This case was an exceedingly difficult case for many reasons. The underlying facts are difficult, the family dynamics were difficult, and the attorney-client relationship was at times strained.[17] If ever there were a case for which a Rule 11(c)(1)(C) disposition was appropriate, this is the case.

For the foregoing reasons, Ms. Kelly respectfully requests that the Court consider the plea agreement as entered by the parties in light of the facts and circumstances of this case. If the Court still rejects the plea agreement, as it clearly always had the authority to do, Ms. Kelly asks that the Court detail the reasons on the record and provide guidance as to whether it is rejecting

---

[13] 45 F.3d 1423, 1439 (10th Cir. 1995).

[14] *See Robertson,* 45 F.3d at 1438.

[15] *Id.*, 45 F.3d at 1438.

[16] *Id.*

[17] Current counsel was appointed after the relationship between Ms. Kelly and her first counsel broke down. *See* Dkt. 25, Dkt. 28, Dkt. 29. Ms. Kelly previously requested that current counsel be removed from this case, and counsel filed a motion to withdraw, which the court denied. *See* Dkt. 33, 36.

the plea agreement *in toto* or whether the Court is merely refusing to be bound by the proposed sentence.

### 2. If the Court rejects the proposed plea agreement in accordance with its newly announced policy, Defendant proposes that the sentence is still an appropriate sentence in light of the 18 U.S.C. § 3553(a) factors.

Calculating a Guideline range is the starting point for a district court to figure the appropriate sentence, but the Guidelines are not the only consideration.[18] The Court must consider the factors listed in 18 U.S.C. § 3553(a) when determining if the sentence requested by a party is a reasonable sentence.[19] Here, when evaluating the 3553(a) factors, it is clear a sentence of 300 months is an appropriate sentence.

### i. The proposed sentence is appropriate when considering the history and characteristics of the defendant.

The sentence of 300 months is appropriate when the Court takes into consideration Ms. Kelly's history and characteristics, which perhaps made her more vulnerable to committing this crime. Ms. Kelly's childhood was challenging. She first was abused by her grandfather then by her step brother. Her mother struggled with alcoholism. She and her mother developed a co-dependent relationship and had an "us against the world" mentality. Ms. Kelly was suffering from a significant depression at the time of the underlying acts.

Of course none of those factors excuse the underlying acts that make up this conviction, however, they do somewhat explain why Ms. Kelly may have chosen to commit them. Studies suggest women have certain vulnerabilities that are linked to their offending behavior.[20]

---

[18] *See Gall v. United States,* 552 U.S. 38, 59 (2007).
[19] *See id.*
[20] *See* Cortoni, F., Hanson, R.K., & Coache, M.È. (2010). The recidivism rates of female sex offenders are low: A metaanalysis. Sexual Abuse: A Journal of Research and Treatment, 22(4), 397.

7

> Specifically, social and psychological alienation, along with extensive histories of victimization, are particularly common among female sexual offenders . . . For these women it is likely that their offending is related to early experiences of severe physical and sexual abuse in combination with biological (e.g., genetic factors; . . .) and social learning variables (e.g., socialization; . . .).[21]

Approximately 36 percent of all women in prison were abused as children and one third of abused children will eventually victimize their own children.[22]

Admittedly, many women suffer abuse and do not commit crime; yet, circumstances similar to those Ms. Kelly faced are often present in female sex offenders.[23] A sentence of 25 years is below the Guideline range but is appropriate given the "characteristics of the defendant".[24]

### ii. The sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

The proposed sentence of 300 months (25 years) is a lengthy sentence which promotes respect for the law and provides just punishment for the offense. The statutory maximum for an offense of production of child pornography is 30 years.[25] The mandatory minimum for a sentence under this statute is 15 years, thus, the parties proposed a sentence that is 10 years *more* than the mandatory minimum.[26] The parties are not requesting that the court drastically depart from the statutorily range. The proposed sentence is greater than the mandatory minimum and is merely five years less than the statutorily maximum allowed sentence. As such, the sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.[27]

---

[21] *Id.* (internal citations omitted).
[22] Administration for Children & Families of the US Department of Health and Human Services, "Child Maltreatment Report, 2003; National Institute on Drug Abuse 2000 Report.
[23] *See* Cortoni et al.
[24] *See* 18 U.S.C. § 3553(a)(1).
[25] *See* 18 U.S.C. § 2251(e).
[26] *See* id.
[27] *See* 18 U.S.C. § 3553(a)(2)(A).

### iii. The proposed sentence affords adequate deterrence to criminal conduct and protects the public from further crimes of the defendant.

It is unlikely that Ms. Kelly will offend again; a sentence of 300 months would adequately protect the public from further crimes of Ms. Kelly and sufficiently deters criminal conduct.

Ms. Kelly has limited criminal history. The state conviction listed at Paragraph 67 of the PSIR arose from the same set of facts as the ones at issue here. These charges, the state and instant federal charges, are her first real contact with law enforcement. Women sexual offenders have extremely low recidivism rates.[28] Only 1-3 percent of female sexual offenders re-offend.[29] Studies have found that female sexual offenders, once they have been detected and sanctioned by the criminal justice system, tend not to reengage in sexually offending behavior.[30] In fact, most female sexual offenders are not convicted of any new crimes.[31] In light of the studies, it appears there is a very slim chance that Ms. Kelly will offend again. Additionally, a sentence of 25 years will mean that Ms. Kelly is in her mid to late 40's when she is released and, consequently, have a much more mature ability to cope with life's challenges. For the foregoing reasons, a sentence of 25 years will adequately "protect the public from further crimes of the defendant".[32]

### iv. The proposed sentence would provide Ms. Kelly with the needed correctional treatment.

A sentence of 300 months would provide more than adequate time for Ms. Kelly to obtain needed correctional treatment.

As referenced above, Ms. Kelly's family dynamic was not healthy when she was growing up. What Ms. Kelly needs is direction in how to live her life as a productive member of society.

---

[28] Cortoni, et al., at 387–401.
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *See* 18 U.S.C. § 3553(a)(2)(C).

This can be more than accomplished in a sentence of 25 years. This length of sentence would allow Ms. Kelly to learn to appropriately address the challenges life may bring, complete many rehabilitation programs offered by the Bureau of Prisons, and learn to effectively cope with her emotions. Thus, this sentence would provide Ms. Kelly with needed medical care and correctional treatment in the most effective manner.[33]

> **v.   The proposed sentence would not create unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Defendants sentenced under 18 U.S.C. § 2251 in the District of Kansas are sentenced in ranges similar to the proposed 300 months.

As detailed above, the proposed sentence falls squarely in the statutorily allowed range. Courts in this district have sentenced defendants in similar cases to similar sentences. *See United States v. Kearn,* 13-40057 (Defendant sentenced to 292 months upon conviction under 18 USC 2251); *United States v. Sims*, 13-10186-MLB (Defendant sentenced to 220 months for conviction under 18 U.S.C. § 2251). Thus, the sentence would not create a sentence disparity among similarly situated defendants.[34]

> **vi.   The above circumstances are of a kind not taken into consideration by the Sentencing Guidelines.**

Mental health concerns, the gender of the offender, and family history are factors that are "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines,"[35] and support a conclusion that the plea agreement represents an appropriate disposition of this case.

---

[33] *See* 18 U.S.C. § 3553(a)(2)(D).
[34] *See* 18 U.S.C. § 3553(a)(6).
[35] 18 U.S.C. § 3553(b)(2),

## CONCLUSION

For the reasons set forth above, whether it be by agreeing to the terms of the plea agreement or in consideration of the 3553(a) factors, Defendant respectfully request that the Court sentence Ms. Kelly to a term of 300 months.

Respectfully submitted,

**FOLAND, WICKENS, EISFELDER, ROPER & HOFER**
1200 Main Street, Suite 2200
Kansas City, MO 64105
Telephone:	(816) 423-5300
Fax:	(816) 472-6262
E-mail:ethompson@fwpclaw.com


   __s/ Erin Thompson_____
Erin Thompson (#22117)

ATTORNEYS FOR DEF. KELLY


## CERTIFICATE OF SERVICE

I do hereby certify that on the 11th day of July, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing and a copy of the filing to all counsel of record.

_s/Erin Thompson_____
**Erin Thompson, #22117**